Alright, our next case set on the 10 o'clock docket is Gregory Gvillo v. DeCamp Junction. And Mr. Donahoe for the appellants. Thank you. May it please the Court of Counsel, like you said, my name is Chris Donahoe and I represent Mr. Gvillo. This is actually the second time I am here before this Court on behalf of Mr. Gvillo on this case. Two of you may remember the first time. But briefly, Mr. Gvillo was injured in 2007, actually it was August 30, 2007, while playing in a game of softball at DeCamp Junction. We filed a lawsuit against the participant defendant and the organizational defendants who are DeCamp and Moultrie. The participant defendant is no longer a party to this action. We filed that suit based upon the organizational defendants' negligence. Judge Callas in 2010 granted summary judgment for those defendants. We appealed that. This Court subsequently reversed and remained it. We were then set for jury trial last November. And on the day of the first day of jury trial, Judge Matozzi again granted summary judgment for the organizational defendants. But this time it was based upon the Illinois Recreational Land and Water Areas Act. Now, Mr. Gvillo was injured in August of 2007. There was an amendment to the act in 2005 that went into effect on August 18, 2005. And in that act, it limited the scope of protected activities to only hunting and recreational shooting, a combination thereof, or an activity solely related to hunting and shooting. Now, before 2005, the act was pretty broad. It protected a long list of activities, including softball. But in 2003, in the Hall v. Hinn case, the Supreme Court changed the long history of the act. And in the Supreme Court case of Hall v. Hinn, the court said you must open your land up to the general public to be included under this act. Before that case, you could open your land up to selected guests, selected individuals. But in that case, the property owner only opened his land up to selected guests. And the Supreme Court said no. The specific language of the statute says you must open it up to the general public. Therefore, you're not protected under the act. So as a result of that case, the Supreme Court amended the act in 2005. And they did three things to that act. One— The Supreme Court? The Supreme Court and Hall v. Hinn. You mean the legislature after? After, that's correct. And the legislature—I'm sorry, the 2005 legislature changed the act in three ways. And what they did, one, is they included any individual into that definition of general public. So now if you opened up your land just to selected guests, you are now covered under the act. Now you don't have to open your land up to the general public. Two, they excluded residential property and residential buildings from the act. And three, which is what is important to our case, is they amended and revised the definition of recreation and conservation purpose. And they changed it to mean entry onto the land of another to conduct hunting or recreational shooting or a combination thereof or any activity solely related to the aforesaid hunting or recreational shooting. So the language that the defendants relied upon in their motion for summary judgment had been stricken from the act as of August 18, 2005. The act only included those two types of activities. It did not include negligently setting up a ball field or playing softball. The legislature knew it was important to preserve some type of premise liability. They included individuals into the definition of general public, but at the same time they limited the scope of protected activities. And they did that to encourage property owners to keep their property safe from negligence and other causes of action. Now the defendants are now claiming that this act is somehow ambiguous. They did not make this argument at the circuit court. But when you look to the intent of the legislature, the first thing you do is you look to the statutory language in the plain and ordinary meaning. And when you look to that definition of recreation and conservation purpose, it clearly states that those are the protected activities. I don't see any ambiguity in that act at all. I don't understand how you could say that softball falls under that definition. When you look at those specific words, they're very clear, they're precise. And when they're clear and precise and you can understand the intent, there's no need to look to the legislative history. There's no need to look to the Senate discussion or other aides. But if you believe it's important to do so, I don't believe it changes anything. Now the defendants, they attached in their brief some Senate discussions. And the counsel for the defendants italicized a quote where they brought up recreational uses. Now I believe it's important to read that entire conversation there because the senator asked a question about whether moving equipment for a deer stand is covered under the act. And the response was this is for other recreational uses. But then when you read on to the area that's not italicized, the senator specifically says I want to clarify. Deer stands and other things associated with hunting under the right circumstances would be covered. That's exactly what the statute says. Recreational hunting or recreational shooting, hunting or other activities related to hunting and shooting. That's exactly what he's saying. I also think it's important to note that they bring up the trial lawyers and the NRA in that discussion. The trial lawyers were probably involved because they understood it was important to preserve some type of premise liability there to encourage property owners to keep their property safe. The NRA was obviously involved so there would be places to hunt and shoot. Now, they also state or I say they, I'm referring to counsel for the defendants, state that because of the definition of charge under section 2D, they mention products of recreational use. And because of this language, it's somehow ambiguous. I don't see any ambiguity in this at all. Products of recreational use, in my opinion, are products of hunting.  If you go in any Cabela's or Bass Pro Shops, you will see all kinds of products of hunting. I don't understand how you could say there's a product for playing softball, playing baseball. There are no products for playing softball or baseball, but there are products for hunting. And hunting is one of the definitions under recreation and conservation purpose. The defendants also bring up the 2014 amendment. The 2014 amendment went into effect this year. It does not have any bearing on this case. If the defendants thought that playing the game of softball fell within the definition of hunting and shooting, then there would be no need for the 2014 amendment. Now, the 2014 amendment is clearly a substantive act. It cannot be applied here, number one. Number two, it clearly states that the 2014 act only applies to actions occurring after January 1, 2014. Like I said, Mr. Gavillo was hurt in 2007. Mr. Gavillo already has a vested cause of action. Now, finally, I would address the Vaughn v. Barton case, which this court heard back in 2010. They claim that this case is controlling on this matter before us today. But the plaintiff in Vaughn v. Barton was injured in May of 2005, before the 2005 act was amended. Mr. Gavillo was injured after the act was amended. Was that argument made before the trial court, the argument you just made? Did you bring to the trial court's attention the statute that was in effect the day of the amendment, the day of the occurrence in Vaughn? Yes. I wish we had it on the record. I really do, but nothing was on the record. We brought that up. I think what the court was looking at, and I may be mistaken, but the decision of Vaughn v. Barton came out in 2010, after the act had been amended. But the Vaughn v. Barton case was referring to a case that occurred before the statute had been amended. So when this court made its decision, it was interpreting language before the 2005 act. And I agree with your decision. It had a broad sweeping scope, but that was the act before the 2005 amendment. And I believe Judge Weston even stated in his decision that the legislature was not throwing a curve ball here, trying to throw it right down the pipe. And I agree with that. But I would say the same thing with regards to the 2005 amendment. It clearly and specifically states that there are only two types of activities protected. I would say the same. They didn't just throw it down the pipe here. I think they threw it in under it. The Vaughn case was a softball case, too? It was a baseball case. Oh, okay. The plaintiff was injured while watching. I could say this after I'm tea, at least. The plaintiff was injured while watching a baseball game. So I don't think that has any effect on this case whatsoever because the accident occurred before the amendment was changed. Now, to conclude, I don't think there's any ambiguity here. If you look to the plain language and give it the plain and ordinary meaning, it's clear, it's precise. The act that was in effect before 2005, August of 2005, has no bearing on this because, fortunately, Mr. Gavillo was injured in 2007. The 2014 act has no bearing on this, and, therefore, the order granting summary judgment should be reversed and remanded. Thank you. Thank you. All right. Argument for the appellees. Mr. Grangley. Thank you, Your Honor. May it please the Court, Your Honor, counsel, it is the defense's contention in this case that in granting summary judgment to the defense, the trial court correctly construed the legislative intent of the Illinois Recreational Use of Land and Water Areas Act. I think, and I submitted in the source of my brief, is that statutory interpretation of this act is necessary to both ascertain and give effect to the legislature's intent in enacting the statute from its inception in 1965. That legislative intent has been clear from the outset. In fact, it's contained in Section 1 of the act. The purpose of the act is to encourage landowners to open their land up and water areas up, to make it available to individuals, members of the public, for recreational and conservation purposes, in return for which the landowners are granted tour community under most circumstances, not wolf and want misconduct, but any alleged negligent misconduct that may occur. I submit to you, Your Honors, that the scope of the amenity, as well as the types of the activities that fall within that, under recreational and conservation purposes, is ambiguous. And I was cited to the Court under the section of the act as amended in 2005. The legislature in 745 ILCS 652D defines charge. The amenity applies to those landowners who admit individuals or the public to their land without charge. But the definition of charge means an admission fee to go upon the land, but does not include the sharing of game, fish, or other products of recreational use. Now, I would submit that one does not shoot or hunt fish. In fact, I think it's illegal in the state of Illinois to do so. Why reference that if there – I think that this points out the ambiguity of the statute, which I think makes it incumbent upon this Court to look further in interpreting the legislature's intent in enacting this, particularly as amended. Our Supreme Court, as I cited in a brief in the Michigan Avenue National Bank, has stated that the fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. Now, clearly, one of those things would be a reference to the plain language. And if one stops the analysis only at the definition of recreational or conservation use, that's the end of the story. But I think that's an inaccurate and incomplete analysis of the legislature's intent in the Recreational Use Act. Again, that intent is to encourage landowners to open their lands to the public or even selected members of the public. And I think that the 2005 amendments was an attempt, albeit a less than stellar one, of the legislature to address the concerns of landowners raised after the Illinois Supreme Court decision in Hall v. Hinn, which, as Mr. Donahue referred to, held that if the landowner opens his land only to selected and by tees and not the public at large, then the tort immunity offered by the Act is not available. This Court, in People v. Conduct, has indicated and held that in addition to the language of the statute, the Court should consider the reason for the law, the evils to be remedied and objects and purposes to be attained, and should consider the legislative history when considering the statute and construe that in conjunction with other sections in order to make that consistent. I would submit, and I've included in my brief, the legislative history of the 2005 amendment to the Act. I think that the primary thrust or intent of the amendment was to address the Hall v. Hinn. I think this was perhaps overreaching on the part of the legislature in order to avoid that perceived evil of denying landowners immunity. I see no purpose in having amended the recreational conservation purpose definition, but if you will look at the legislative history and the colloquy that occurred on the Senate floor prior to passage of this, I think it becomes clear that Senator DiMuzio, who was the bill's sponsor, clearly envisioned this to be as sweeping as it has been prior thereto and is now. The question was from Senator Dillard, who asked Senator DiMuzio, if I own your land and I'm moving equipment for a deer stand, is this covered under the bill? Her response is, yes, it is, Senator. This is for other recreational uses, too. So not only would it be for hunting, but for all other recreational uses. But that would be ignoring the very definition that they put in the statute of what recreational uses were. If that is the end of the analysis for this court, then that's the end of the story, Your Honor. I agree. What I'm telling you, though, is I think it's incumbent upon this court to... No, what I'm saying is she could have been very readily using recreational uses as defined under the statute, which was to pertain only to shooting and hunting and a combination thereof. But why then does the legislature, in its definition of charge in Section 2 of the Act, refer to the taking of charitable gain, which is an excluded issue in charge? I think this is clearly indicative of the ambiguity of the statute, because one does not hunt fish. One does not shoot fish. If it wasn't within the purview of the legislature at that point to indicate that one might take fish in the process of a recreational use broader than what the definition of recreational use is, i.e. fishing, then why include that? That doesn't make sense. How do you get fish? Pardon me? How do you get fish? By fishing and not recreational shooting or hunting. You don't hunt fish. So if that's an exclusion under the Act, under the definition of charge, I think it indicates that there was a broader purview of the legislature than what, unfortunately, the definition would seem to provide. Are you still relying on bond after the point that's been made that that dealt with the pre-2005 language? I do not dispute, Your Honor, that the injury in bond occurred in May of 2005, roughly three months prior to the amendment of the Act. But I do think that this Court, in the bond versus bargain decision, clearly delineated what the legislative intent is, which is to encourage landowners to make their land open and available to the public in return for tort immunity and not having to face the fear that Mike Lyons would today with regard to this. It would be then a little perplexing as to why the Illinois trial lawyers were in favor of the amendment. Well, I think this, Your Honor. I think that the Illinois trial lawyers were concerned that there would be overreaching and that there would be a complete abrogation of premises liability in the state of Illinois. I don't know that they were that concerned about reducing the scope of a recreational or conservation use to the extent that the definition of that as amended would be. I don't see that. I think that there was a concern that we do not want to abrogate general rules of premises liability. But I think if you look at the primary legislative intent for the enactment of the statute, which has been enunciated and has remained unchanged since the inception of the Act in Section 1, which is that the purpose of this is to open lands for public use, to encourage landowners in the state of Illinois to do this. But to define what type of use. I took the excerpt of the Senate floor interchanges that it was kind of a win-win situation because you've got the NRA joining with the ITLA, which doesn't happen very often. No, it doesn't happen very often. But it was kind of a win-win situation because they were allowing immunity for hunting and shooting recreational purposes and then clarifying that there wasn't immunity for non-hunting and shooting recreational purposes. I understand your point, Your Honor. But I think that Senator Demuse's response is indicative, and I think it should be given some weight by the court, that it's to be construed much more broadly than for just hunting but all other recreational uses. I don't know that that was a term of art used by the Senator in her response as the amended definition was, but rather a much broader applicability and scope of protected activity. I will agree with you that I think that this was artfully drawn to interpret it only referring to the plain language of the recreational and conservation use, force the entire legislative intent of the Act, which is to encourage landowners to open their lands to the public in return for limited or no liability and immunity under the Act. So for all those reasons, the defendants submit that the trial court in ruling in favor of the defendants on the defendant's summary judgment motion correctly interpreted the legislative intent, overall legislative intent of the Recreational Use Act, and we ask that this court affirm the judgment in that respect. Thank you. Thank you, Counsel. We vote. Briefly. I believe the defense counsel is grasping at straws when they bring up fish, and then that makes this entire act ambiguous. I don't know whether you would call it hunting or fishing or not, but I've seen video online of them shooting carp on the Illinois River up in Grafton with bow and arrows. Whether that's considered hunting or shooting, I don't know. But I think just because fish is listed there, I think that's clearly grasping at straws. This law has been in effect for nine years. So it's not like they made a decision here and then they realized they made a mistake and they went in two months later and it changes. The intent by the legislature is clear that there's only two types of protected activities. The Senate discussion, which was discussed there, clearly shows they say that hunting under the right circumstances is covered. That's exactly what the statute says. If Senator D'Amico thought that it covered other recreational uses, I would have thought she would have followed up after that. If she was, in fact, the sponsor on this bill, I would have thought she would have spoken up and said, no, wait a minute, it covers other acts too, not just what Senator Dillard stated here. So I think it's clear, it's precise. You look to the plain and ordinary language of the statute. It states that there's two types of activities. Those are hunting and recreational shooting. I don't think you can, with a straight face, say that playing softball or negligently setting up a ball field falls under this act. Thank you. Thank you. We will take this case under advisement.